UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Timothy MacKenzie

    v.                                    Civil No. 15-cv-198-JD
                                          Opinion No. 2016 DNH 034
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R


Timothy MacKenzie seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for disability insurance benefits and supplemental security income. In support of his motion to reverse, MacKenzie contends that the Administrative Law Judge ("ALJ") erred in assessing his residual functional capacity, which resulted in an erroneous determination that he was not disabled. The Acting Commissioner moves to affirm the decision.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's

factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background

In this district, parties in a social security case are required to prepare and file a joint statement of material facts that "describe[s] all facts pertinent to the decision of the case and all significant procedural developments, and define[s] all medical terms."  LR 9.1(c) & (e).  Therefore, the background facts are summarized from the parties' joint statement of material facts.[1]

MacKenzie applied for social security benefits in September of 2012, alleging that he had been disabled since November 12, 2008.  He was thirty-three years old when he filed his application.  Although he left school after the ninth grade, MacKenzie then earned a high school equivalency diploma, known as a GED.

In December of 2012, Dr. Matthew Masewic did a consultative

---

[1] Although the ALJ refers to other record evidence in his decision, the parties did not describe that evidence in their joint statement.

orthopedic examination of MacKenzie.  Dr. Masewic found that MacKenzie had some degenerative disk disease in his neck, greater on the right side, but noted that he was not able to do a complete examination because MacKenzie would not allow it, claiming pain.  Dr. Masewic concluded that the functional issues and pain MacKenzie complained of were not related to his neck and that either MacKenzie was embellishing his symptoms or he had another disorder that had not been diagnosed.  In functional terms, Dr. Masewic found that MacKenzie's degenerative disk disease had a mild to moderate effect on his functional capacity and that his lower back pain, which could not be properly examined, would also have a mild to moderate effect on his functional capacity.

Dr. Masewic noted that MacKenzie had a greater range of motion while in his office than he demonstrated during the physical examination and that MacKenzie's complaints of pain were out of proportion to his ability to walk, lie down, and sit in a chair.  Dr. Masewic also noted significant discrepancies between MacKenzie's reports of impairment and his demonstrated abilities.  For example, while MacKenzie claimed a loss of sensation and weak grip strength in his hands, those impairments were inconsistent with a lack of atrophy in his hands, with normal dexterity, and his ability to pick things up and use his right hand to get off the examination table.  Dr. Masewic wrote

that MacKenzie's story about having to tape a hammer to his hand to use it was "preposterous".  MacKenzie also displayed a protected and broad-based gait that Dr. Masewic found "strange" because his neck issues would not affect his gait.

State agency psychologist Laura Landerman, Ph.D., reviewed MacKenzie's records in January of 2013.  Dr. Landerman concluded that MacKenzie had moderate difficulty in maintaining social functioning.  She also found that MacKenzie was at most moderately limited in his ability to interact with supervisors.

In November of 2013, MacKenzie's physical therapist, Rachel Heath, completed two forms for MacKenzie, a "Medical Source Statement of Ability to Do Work-Related Activities" and a "Rehab Report:  Evaluation Summary with Functional Assessment."  The Rehab Report was also signed by MacKenzie's primary care physician, Dr. Christopher Allen.  On both forms, Heath indicated that MacKenzie was limited in his ability to do manipulative activities, such as fine motor tasks, reaching, fingering, and handling, which he could do occasionally.  Heath noted, however, that MacKenzie used less than maximum effort during the testing and that he demonstrated a "minor discrepancy in level of consistency to the reliability and accuracy of pain and disability."

The hearing on MacKenzie's application was held on January 14, 2014.  MacKenzie testified that he was currently homeless,

living in a tent in the woods, and that he worked part time for friends doing jobs like picking up brush and sticks to make fire piles and keeping their job sites neat.  He also testified that he was taking 15 milligrams of Oxycontin eight times a day in order to be able to get up and move around and that on some days he stayed in bed all day covered in heating pads and crying.  He said that his arms and hands were completely numb and that he suffered from severe migraine headaches.

A vocational expert participated in the hearing by telephone.  The ALJ posed a hypothetical to the vocational expert of a person limited to light work with certain postural limitations and restrictions in the work setting.  The vocational expert testified that such a person could do jobs as a price marker, mail sorter, and collator operator.  MacKenzie's counsel asked the vocational expert to add the physical limitations that MacKenzie's physical therapist indicated in her Medical Source Statement.  In response, the vocational expert said that person could work as a surveillance-system monitor and a callout operator.

The ALJ issued a decision on January 24, 2014, finding that MacKenzie was not disabled.  The Appeals Council denied MacKenzie's request for review, making the ALJ's decision the final decision of the Acting Commissioner.

Discussion

MacKenzie contends that the ALJ's residual functional capacity assessment is not supported by the record evidence. MacKenzie further contends that because of the alleged errors in the residual functional capacity assessment, the finding that jobs existed which MacKenzie could do was also error, requiring that the decision be reversed.  The Acting Commissioner moves to affirm, arguing that any error in the physical residual functional capacity assessment was harmless because of the hypotheticals posed to the vocational expert and that the ALJ properly considered Dr. Landerman's opinion in assessing MacKenzie's psychological impairments.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis.  20 C.F.R. §§ 404.1520 and 416.920.[2]  The claimant bears the burden through the first four steps of proving that his impairments preclude him from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Acting Commissioner has the burden of showing that

---

[2] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations.  See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

jobs exist which the claimant can do.  Heggarty v. Sullivan, 947
F.2d 990, 995 (1st Cir. 1991).

A.  Residual Functional Capacity

In assessing a claimant's residual functional capacity, the
ALJ determines "the most [the claimant] can do despite [his]
limitations . . . based on all the relevant evidence in [the]
case record."  20 C.F.R. § 404.1545(a)(1).  The ALJ found that
MacKenzie was physically able to do work at the light exertional
level, with postural restrictions.  The ALJ also addressed
MacKenzie's psychological limitations by restricting him to
unskilled work in a low stress environment and requiring that he
"avoid all social interaction with the general public" and have
only "brief and superficial social interaction with coworkers
and supervisors."

1. Headaches

MacKenzie states briefly that the ALJ erred in failing to
find that his headaches were a severe impairment at Step Two and
in failing to consider his headaches in assessing residual
functional capacity.  The Acting Commissioner contends that
MacKenzie did not sufficiently develop this issue to allow
review.  The court agrees.

The parties' joint factual statement, which must include
all of the facts that are pertinent to the decision, does not

mention headaches.  The ALJ addressed the issue of headaches at Step Two and did not find a severe limitation because MacKenzie had not previously alleged headaches and because of the lack of medical records showing treatment for headaches.  In his memorandum, MacKenzie cites twenty or more pages of the administrative record to show that his headaches were severe without explaining what the records demonstrated in support of his claim.[3]

As such, MacKenzie has not shown any error by the ALJ in failing to find that his headaches constituted a severe impairment at Step Two and failing to consider headaches for purposes of the residual functional capacity assessment.

2.   Physical Capacity

MacKenzie contends that the ALJ erred because there is no opinion in the record that provides a functional capacity assessment for light work.  He argues that the ALJ should have credited his physical therapist's assessment, adopted by Dr. Allen, that he was limited to sedentary work with additional limitations, including only occasionally being able to do manipulative activities.  In response, the Acting Commissioner

---

[3] The cited records appear to pertain to treatments for MacKenzie's neck pain, not headaches.  Although headache is mentioned, there is no evidence of the severity or effects of the headaches.

labels MacKenzie's argument a "red herring" because MacKenzie's counsel asked the vocational expert a question with the physical therapist's more restricted assessment and the vocational expert identified jobs that could be done with those limitations.

Before determining the exertional level of work a claimant can do in a residual functional capacity assessment, an ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (July 2, 1996).  Nevertheless, an ALJ's failure to assess all functional limitations, as required by SSR 96-8p, is harmless if the functional assessment is provided in the record. See Beaune v. Colvin, 2015 WL 4205251, at *3, 2015 DNH 136 (D.N.H. July 10, 2015); Dunning v. Colvin, 2015 WL 4139618, at *5 (D. Me. July 9, 2015).  Generally, an ALJ is not qualified to interpret medical records in functional terms and must rely on an evaluation done by a physician or another qualified expert. Nguyen, 172 F.3d at 35.

In making his residual functional capacity assessment, the ALJ gave great weight to Dr. Masewic's opinion but also acknowledged that Dr. Masewic did not provide a function by function assessment.  The record does not include a functional

capacity assessment that supports the ALJ's findings.[4]
Therefore, the ALJ's residual functional capacity assessment is
not supported by substantial evidence in the record.

### 3.  Psychological Limitations

MacKenzie charges that the ALJ's residual functional
capacity assessment was also inaccurate because it omitted the
limitation found by Dr. Landerman that MacKenzie would have to
work in an environment with a "non critical supervisor."  The
Acting Commissioner contends that this alleged error amounts to
an assertion that "the ALJ did not properly account for three
words" in Dr. Landerman's opinion and argues that the "three
words . . . are so ambiguous that the ALJ could not possibly
have adopted them."  The Acting Commissioner further contends
that substantial evidence supports the ALJ's omission of that
limitation.

Dr. Landerman indicated that MacKenzie's psychological
limitations would cause, at most, moderate limitations in his
ability to function in a work environment as long as he had had
limited social interaction and a non-critical supervisor.  The
ALJ gave significant weight to Dr. Landerman's opinion.  The

---

[4] This case presents a troubling situation in which it appears
that MacKenzie so embellished or exaggerated his symptoms and
impairments that an accurate functional assessment was difficult
if not impossible.

ALJ's assessment that MacKenzie retained the functional capacity to do unskilled work, in a low stress environment, and with limited interaction with the public, coworkers, and supervisors was based on that opinion.  The ALJ, however, did not include the limitation that MacKenzie would need to have a non-critical supervisor.

Dr. Landerman's opinion that MacKenzie could function in a work setting was predicated on the requirement that he work in an environment with a non-critical supervisor.  Without that limitation, Dr. Landerman's opinion does not support the ALJ's residual functional capacity assessment.  The record does not include another opinion that MacKenzie could work despite his mental and psychological limitations.

The ALJ did not explain why he omitted the requirement of a non-critical supervisor.  Although the Acting Commissioner now attempts to explain the omission, the ALJ did not provide that explanation.  Post hoc rationalization cannot be considered in support of the ALJ's decision, as review is generally limited to the reasons provided by the ALJ in the decision.  See SEC v. Chenery, 332 U.S. 194 (1947); Graves v. Colvin, 2016 WL 270382, at *7, n.4 (D. Mass. Jan. 21, 2016); Van Blarcom v. Astrue, 2011 WL 2118643, at *4 n.2 & 4 (D.N.H. May 25, 2011).  The Acting Commissioner has not shown that an exception to the Chenery rule

11

applies here.  See Desjardins v. Colvin, 2015 WL 4496430, at *8
(D. Me. July 23, 2015).

Therefore, the ALJ did not properly assess MacKenzie's
psychological limitations for purposes of the residual
functional capacity assessment.

B.   Step Five – Disability Determination

At Step Five, a vocational expert's opinions about jobs
provides substantial evidence to support the ALJ's disability
determination if the opinions are based on hypothetical
questions that accurately reflect the claimant's limitations.
See Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 447
(1st Cir. 1991); Otero v. Colvin, 2015 WL 5089810, at *6 (D.N.H.
Aug. 27, 2015).

Although the ALJ's hypothetical to the vocational expert
was not based on a physical functional assessment in the record,
as is required, MacKenzie's counsel provided a hypothetical
based on the physical therapist's functional capacity
assessment.  In response, the vocational expert testified that
even with those physical limitations there were jobs the
claimant could do.  Therefore, the ALJ's error was harmless.

The ALJ's failure to incorporate the non-critical
supervisor limitation, however, was not corrected.  Because Dr.
Landerman's opinion about MacKenzie's ability to function in a

work environment required a non-critical supervisor and no other opinion supports the ALJ's residual functional capacity assessment, the omission of that limitation is not harmless.  As a result, the ALJ's hypothetical question to the vocational expert did not accurately reflect MacKenzie's limitations, as found by Dr. Landerman, and the vocational expert's testimony did not provide substantial evidence to support the decision.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 9) is granted.  The Acting Commissioner's motion to affirm (document no. 14) is denied.

The decision of the Acting Commissioner is reversed, and the case is remanded under Sentence Four for further proceedings.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

February 23, 2016

cc:  Penelope E. Gronbeck, Esq.
     T. David Plourde, Esq.